# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL KRUEGER, Individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>WYETH, INC., f/k/a AMERICAN HOME PRODUCTS, a Pennsylvania Corporation, et al.,<br><br>  Defendants. | CASE NO. 03cv2496-JAH (MDD)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S REBUTTAL EXPERTS<br><br>[ECF NO. 181] |

Before the Court is Defendants' motion to strike the reports of Drs. Papperman and McCorvey designated as rebuttal experts by Plaintiff. (ECF No. 181). The motion was filed on July 5, 2012. Plaintiff responded on July 18, 2012. (ECF No. 186). Plaintiff replied on July 23, 2012. (ECF No. 187). Defendants assert that the reports of Drs. Papperman and McCorvey are not "rebuttal reports" within the meaning of Fed.R.Civ.P. 26(a)(2)(D)(ii) and are untimely as initial reports pursuant to the scheduling order governing this case. (ECF No. 152). Plaintiff claims that the reports of Drs. Papperman and McCorvey rebut the testimony of defense experts Drs. Arias, Goldman, Nelson and Policar.

In particular, Plaintiff asserts that Drs. Arias, Goldman, Nelson and Policar maintain active obstetrics and gynecological medical practices and offered opinions

1  based upon their clinical experience. Plaintiff did not initially designate any physicians
2  practicing in obstetrics and gynecology as experts. Plaintiff claims that Drs. Papperman
3  and McCorvey are practicing physicians in obstetrics and gynecology and offer opinions
4  different from Defendants' experts. Defendants counter that Dr. Papperman's primary
5  report and Dr. McCorvey's report were prepared months before the disclosure of
6  Defendants' expert reports and, consequently, cannot be said to rebut opinions offered
7  in reports that had not yet been disclosed. Plaintiff requests that in the event the Court
8  finds the proffered reports to not properly be rebuttal evidence, that Plaintiff should be
9  given relief from the scheduling order and be allowed to designate these reports as initial
10 reports at this time.

## Background

12 In this litigation, Plaintiff alleges Defendants' advertising campaign
13 misrepresented the benefits and failed to disclose the risks of its hormone
14 replacement drugs during the class period. The underlying class action complaint
15 was filed in this district on December 12, 2003. (Doc. No. 1). On March 20, 2004, the
16 Judicial Panel on Multidistrict Litigation transferred this case to the Eastern District
17 of Arkansas for coordinated pretrial proceedings. (Doc. No. 6). On March 20, 2007,
18 after that court declined to certify a multi-state class of consumers alleging consumer
19 fraud and seeking medical monitoring for any future injuries that arise from their
20 use of Prempro, it remanded Plaintiff's case to this district. (Doc. No. 9).

21 Back in this court, Plaintiff moved to certify a class on May 14, 2007. (Doc. No.
22 15). That motion was denied without prejudice on February 19, 2008. (Doc. No. 44).
23 On March 4, 2008, Plaintiff moved to stay all proceedings pending the outcome of
24 certain litigation pending before the California Supreme Court. (Doc. No. 47). The
25 stay was granted, ultimately, until July 31, 2009. (Doc. Nos. 52, 58). On January 7,
26 2010, Plaintiff again moved for class certification. (Doc. No. 61). That motion was
27 granted in part and denied in part on March 30, 2011. (Doc. No. 108). A motion for
28 reconsideration was denied on July 13, 2011. (Doc. No. 122). The Court of Appeals for

1 the Ninth Circuit declined permission to appeal the class certification order on

2 October 18, 2011. (Doc. No. 124).

3   The class, as certified by the District Court is:

4  All California consumers who purchased Wyeth's Hormone Replacement
  Therapy products, Premarin, Prempro, and/or Premphase, for personal
5  consumption between January 1995 and January 2003, and were
  exposed to a representation from Wyeth, or health care providers, or
6  read in literature in which Wyeth advertised or provided to third parties
  to be disseminated under its brand or the third parties' brand, that
7  Premarin, Prempro, and/or Premphase lowered cardiovascular,
  Alzheimers and/or dementia risk, or did not increase breast cancer risk,
8  and do not seek personal injury damages resulting therefrom.

9   <u>Summary of Arguments and Relevant Expert Opinions</u>

10   Rule 26(a)(2)(D) governs the time within which parties must disclose expert

11 testimony. Evidence intended solely to contradict or rebut evidence on the same

12 subject matter identified by another party must be made within thirty days after the

13 other party's disclosure. Rule 26(a)(2)(D)(ii). The scheduling order in the instant

14 case provided for staged expert disclosures. (ECF No. 152). The expert reports at

15 issue here pertain to non-economic damages. Initial expert disclosures of this type

16 were required to be exchanged no later than May 9, 2012. Disclosures of

17 contradictory or rebuttal evidence pertaining to non-economic damages were required

18 by June 8, 2012. (*Id.*). The instant disclosures were made on June 8, 2012, and are

19 timely if they are proper rebuttal.

20   Defendants' primary argument is that the proffered rebuttal reports cannot be

21 such because they were prepared approximately six months before the initial reports

22 were disclosed. Hence, say Defendants, there was nothing produced by Defendants at

23 that time to rebut. The Court agrees that Plaintiff has a harder road to show that

24 these reports are properly offered in rebuttal when the opinions that they allegedly

25 rebut had not yet been offered. Nonetheless, the question is not when the reports at

26 issue were penned, it is whether they "contradict or rebut evidence on the same

27 subject matter." Rule 26(a)(2)(D)(ii). *See also Lindner v. Meadow Gold Dairies, Inc.*,

28 249 F.R.D. 625, 636 (D. Hawai'i 2008).

Plaintiff's primary argument that the proffered reports are proper rebuttal is that the experts identified by Defendants are physicians who practice obstetrics and gynecology and offer opinions based upon their clinical practices.  Plaintiff claims that the reports of Drs. Papperman and McCorvey, although penned earlier, nevertheless constitute proper rebuttal because their opinions are inconsistent with those of Defendant's experts and based upon the same experiential matrix as Defendants' experts.  Plaintiff's initial experts, according to Plaintiff, could not offer opinions based upon their clinical practices.

The parties' experts disagree regarding the nature and extent of the risks of breast cancer posed by Defendants' products as well as the risks and benefits of those products regarding the prevention and treatment of osteoporosis, cardiovascular disease and cognitive function.  Of significance here are the competing opinions regarding the veracity and adequacy of the information provided by Defendants to physicians and patients and the extent to which physicians and patients relied on allegedly false and misleading information.

<u>Plaintiff's Initial Experts</u>

Plaintiff included in its initial disclosures the report of Dr. Patsner whose practice included obstetrics and gynecology.  Dr. Patsner's practice evolved into gynecological oncology until he retired from full-time surgical practice in 2000.  Dr. Patsner, among other things, opined, "Physicians depend directly on pharmaceutical companies for the most accurate, balanced and thorough information about the safety and efficacy of of their prescription drug products."  (ECF No. 181-5 at 4).  Dr. Patsner also opined that:

> Rather than follow up on the safety signals, or the information reported in independent studies, Wyeth instead took active steps to downplay, dismiss, undermine and misrepresent this data as well as the risks and benefits of [hormone replacement drugs].  Wyeth did not accurately or adequately convey the information to doctors and patients.  Wyeth also took steps to discredit and neutralize critics of hormone therapy.

(*Id.* at 5).

1    Another of Plaintiff's experts is Dr. Hollon who teaches internal medicine.

2 Included in Dr. Hollon's testimony is his opinion that Defendants:

> persuaded the medical community and the public that healthy, asymptomatic menopausal women would take hormones for an ever expanding list of symptoms by manufacturing data, purchasing professional opinions, and utilizing the entire catalogue of possible promotion activities based on often misleading and unbalanced marketing schemes that over zealously relied on purported but often unfounded beliefs.

(ECF No. 181-6 at 3).

### Defendants' Initial Experts

Dr. Arias, among other things, opined that

> The product information that accompanied HT medicines (including Premarin, Prempro, and Premphase) adequately communicated the risks and benefits of those medicines. In particular, the product information advised both prescribers and women that some studies had found an increased risk of breast cancer, and accurately reflected what was known in the gynecological community about breast cancer risk. The labels also adequately reflected what was generally known about the relationship between HT and cardiovascular disease, as well as other potential risks.

(ECF No. 186-1 at 3).

Dr. Nelson, among other things, disagreed with Plaintiff's allegations that the data regarding risks and benefits of hormonal therapies was manipulated by the manufacturers so that prescribers and women has biased information on which to base clinical decisions. (ECF No. 186-3 at 1-2). Dr. Goldman similarly opined that the claim that women in California were misled as to the risks and benefits of Defendants' products is false. (ECF No. 186-2 at 5). And Dr. Policar, among other things, opined that he disagreed "wholeheartedly with any suggestion that healthcare providers were not aware of the risks and benefits of HT products, including Prempro, Premarin, and Premphase." (ECF No. 186-4 at 4).

### Plaintiff's Rebuttal Experts

Dr. McCorvey, prior to Defendants' reports being disclosed, opined that "[t]he labels for [Defendants' products] did not adequately convey the risks of hormone therapy." (ECF No. 181-1 at 2). Dr. Papperman, prior to the disclosure of

1  Defendants' expert reports, opined that the warnings provided by Defendants with
2  their products were "inaccurate, misleading and inadequate to convey the true breast
3  cancer risk."  (ECF No. 181-2 at 3).  Dr. Papperman provided a supplemental report
4  after Defendants' expert reports were disclosed reaffirming his earlier opinions.
5  (ECF 181-3).

### Analysis

Having reviewed the competing opinions, the Court is of the firm view that neither Dr. McCorvey nor Dr. Papperman are functioning as true rebuttal experts. *See Stephenson v. Wyeth LLC et al,* 2011 WL 4900039 (D. Kansas October 14, 2011). The opinions they offer were prepared prior to the disclosure of Defendants' expert reports and serve merely to reassert Plaintiff's primary arguments in a different voice.  Although the opinions offered by Drs. McCorvey and Papperman are contrary to the opinions of Defendants' experts, neither directly addresses any opinion offered by Defendants' experts.  There is no question that the opinions of Drs. McCorvey and Papperman were available to Plaintiff for designation and disclosure initially.  It appears that Plaintiff decided to offer them as rebuttal experts solely because their medical practices more closely mirror the medical practices of Defendants' experts. Rebuttal is for the purpose of contradicting an opinion.  Rebuttal designations and disclosures are not intended to provide a party with the opportunity to select a more appealing expert, in terms of qualifications, to present the same opinions provided previously by their initial experts.

Having decided that the reports of Drs. McCorvey and Papperman are not proper rebuttal, the question is whether the Court should be permit them to be designated as initial experts.  The time for such designations has long passed.  The Court finds no good cause to allow these witnesses to be designated as initial experts at this late date.  The opinions offered by these doctors is cumulative of other expert testimony offered by Plaintiff.  The Court finds that Defendants would suffer prejudice in having to investigate the backgrounds of these witnesses and,

presumably, obtain their depositions.

## Conclusion

For the foregoing reasons, Defendants' motion to strike Drs. McCorvey and Pappelman as rebuttal witnesses is **GRANTED**. Plaintiff's motion for leave to designate these witnesses as initial experts is **DENIED.**

**IT IS SO ORDERED:**

DATED: August 22, 2012

Hon. Mitchell D. Dembin
U.S. Magistrate Judge