UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL KRUEGER, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>WYETH, INC. f/k/a AMERICAN HOME PRODUCTS, a Pennsylvania corporation; WYETH PHARMACEUTICALS f/k/a WYETH-AYERST PHARMACEUTICALS, a Pennsylvania corporation; and DOES 1 through 100 Inclusive,<br><br>          Defendants. | Case No.: 3:03-cv-2496-JAH (MDD)<br><br>**ORDER OVERRULING DEFENDANTS' OBJECTIONS [DOC. NO. 330]** |

## INTRODUCTION

Defendants Wyeth, Inc., and Wyeth Pharmaceuticals ("Defendants") filed a motion to amend the scheduling order to reopen discovery and for permission to conduct discovery of a sampling of absent class members and prescribers. *Doc. No.* 305. Magistrate Judge Dembin denied the discovery motion and Defendants filed an objection. *Doc. No*. 323, 330. After initial and supplemental briefing, Defendants' objection is now before the Court. For the reasons set forth below, the Court OVERRULES Defendants' objections.

1

This consumer protection class-action lawsuit was filed in 2003. *Doc. No*. 1. The case was transferred to a Multi-District Litigation ("MDL") pending in the Eastern District of Arkansas. *Doc. No*. 6. After limited discovery and motions practice, this action was remanded to this District from the MDL in 2007. *Doc. No.* 9.

On March 30, 2011, this Court granted in part and denied in part Plaintiff's class certification motion, *doc. no.* 108, and certified the following Class:

> All California consumers who purchased Wyeth's Hormone Replacement Therapy products, Premarin, Prempro, and/or Premphase, for personal consumption between January 1995 and January 2003, and *were exposed to a representation from Wyeth*, or health care providers, or read in literature in which Wyeth advertised or provided to third parties to be disseminated under its brand or the third parties' brand, that Premarin, Prempro, and/or Premphase lowered cardiovascular, Alzheimers and/or dementia risk, or did not increase breast cancer risk, and do not seek personal injury damages resulting therefrom. (emphasis added).

Defendants objected to the inclusion of the exposure criteria in the class definition by filing their Motion for Reconsideration of the Class Certification Order. *Doc. No*. 110-1 at 2. Defendants argued that "[a]scertaining who falls within this definition would require individualized inquiries of each potential class member to determine whether she saw any of [the] numerous representations regarding HT and, if so, when." *Id*. at 5. On July 13, 2011, Defendants' motion for reconsideration of the Order granting class certification was denied. *Doc. No.* 122. Defendants filed a petition for permission to appeal the Order certifying the class and the Order denying the motion for reconsideration. The Ninth Circuit denied the petition on October 18, 2011.

A month later, the parties filed the Joint Discovery Plan in which the Defendants stated that they planned "to pursue discovery on a number of matters, including, but not limited to: (3) Class members' physicians' views regarding Premarin, Prempro and Premphrase; (4) Class members' exposure to written or oral statements regarding the potential benefits or risks of Premarin, Prempro and Premphrase; (5) Class members' knowledge regarding the potential benefits or risks of Premarin, Prempro and Premphrase.

*Doc. No*. 126 at 4. The discovery phase began on November 30, 2011 and was scheduled to close on June 15, 2012 pursuant to the scheduling order. *Doc. Nos*. 152, 130.

On May 8, 2012, the parties filed a joint motion for a determination of a discovery dispute. *Doc. No*. 158. The dispute involved the scheduling of nine depositions of non-party witnesses, all of whom were former employees of Defendants. *Id.* Counsel for the witnesses sought a six-week extension through August 3, 2012. *Id.* The magistrate judge found good cause to extend the fact discovery deadline to July 20, 2012, "for the sole purpose of taking the depositions of the nine persons identified in the joint motion." *Doc. No*. 159. At that time, the magistrate judge ruled:

> *No other fact discovery is authorized beyond June 15, 2012*. To the extent that any of these depositions would cause Plaintiff to exceed the ten-deposition limit of Rule 30, Plaintiff must obtain a stipulation from Defendants or seek leave of Court as required. (emphasis added).

*Id*. at 2

On May 16, 2012, Plaintiff filed a motion for leave to take fourteen additional depositions. *Doc. No*. 160. Defendants opposed Plaintiff's motion but offered to stipulate to five additional depositions. *See Doc. No*. 162. The magistrate judge found that Defendants' proffered stipulation was reasonable and allowed Plaintiff a total of fifteen depositions. *Doc. No*. 163 at 3. However, the court emphasized that discovery deadlines would remain unchanged; with a fact discovery deadline of July 20, 2012 and an expert discovery deadline of August 10, 2012. *Id*.

At the conclusion of discovery and after denying Defendants' initial motions for summary judgment and to decertify the class, this Court invited both parties to file supplemental briefs addressing whether to amend the class definition considering the issue of ascertainability. *Doc. No*. 274 at 2.

In the October 7, 2015 Order on the supplemental briefs, this Court deleted the exposure requirement from the class definition, *doc. no*. 295, concluding that it is not necessary to reference exposure in the class definition where, as here, the Court had already drawn the certification-stage class-wide inference of reliance. In doing so, the Court found

that there was sufficient evidence that Defendants employed a massive, systematic advertising campaign during the class period for a fact-finder to conclude that HRT users and prescribing physicians were exposed to the alleged misrepresentations. The Court adopted Plaintiff's suggested class definition and amended the definition to include:

> All California consumers who purchased Wyeth's Hormone Replacement Therapy products, Premarin, Prempro, and/or Premphase, or personal consumption between January 1995 and January 2003, and who do not seek personal injury damages resulting therefrom.

A case management conference was held on December 11, 2015 and the magistrate judge set a briefing schedule on Defendant's request for discovery of absentee class members. *Doc. No.* 304. On January 8, 2016, Defendants filed the motion seeking to amend the scheduling order and for absent class member discovery. *Doc. No.* 305. The motion was fully briefed by the parties. See *Doc. Nos.* 306, 308, 312. Defendants argued "the removal of the exposure requirement dramatically changed the class definition, and the Court imposed a presumption of exposure that did not exist before." *Doc. No.* 312. Defendants sought permission to conduct limited surveys and depositions from a sampling of absent class members and their prescribers to determine: (1) whether absent class members were exposed to the alleged misrepresentations, (2) the degree of exposure, and (3) the effect of that exposure on individual class members' decisions to purchase the hormone therapy medication. *Id.* at 25. In addition, Defendants argued that discovery is highly relevant, and necessary to present their defense that individual class members cannot prove an injury or harm if they were not exposed to any alleged misrepresentation – elements required for both Article III standing and liability under California consumer protection laws. *Doc. No.* 305-1 at 8.

On April 4, 2016, the magistrate judge issued an order denying Defendants' motion to reopen discovery. The magistrate judge found:

> Defendants… failed to show good cause for amending the Scheduling Order…[T]he 2015 Order did not shift the burden of proof to Defendants on any elements or Article III standing, nor did it enlarge the Class in any way that deprives Defendants of the right to present any defense. Further, Defendants have not shown good cause

because they were aware of the facts and theories supporting their request for discovery of absent class members' exposure both before and during the discovery period. Their failure to pursue this discovery while discovery was open despite knowledge of the supposed need precludes a finding of diligence.

*Doc. No.* 323 at 13.

Defendants filed a timely objection. *Doc. No.* 330. While awaiting a ruling on the objection, Defendants filed a motion for summary judgment, *doc. no.* 341, incorporating the argument that Plaintiff's had not produced evidence of injury or reliance by class members on the alleged misrepresentations and omissions. The Court issued an order granting in part and denying in part Defendants' motion for summary judgment. *Doc. No*. 382. Thereafter, upon Defendants' request, the Court allowed the parties to submit supplemental briefing on Defendant's objection to the discovery order. *Doc. Nos*. 389, 390. The objection is now before the Court.

### LEGAL STANDARD

A magistrate judge's ruling on a non-dispositive motion will be upheld unless it is "clearly erroneous or contrary to law." *Fed.R.Civ.P.* 72(a); 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard applies to the magistrate judge's factual determinations and discretionary decisions. *Computer Economics, Inc. v. Gartner Group, Inc*., 50 F.Supp.2d 980, 983 (S.D.Cal.1999). Under this standard, the district court gives significant deference to the magistrate judge's ruling, and only overturns that ruling upon a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993). The "contrary to law" standard applies to a magistrate judge's purely legal determinations. *Computer Economics, Inc*., 50 F.Supp.2d at 983. "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1110-11 (E.D. Cal. 2011) (citing *DeFazio v. Wallis*, 459 F.Supp.2d 159, 163 (E.D.N.Y. 2006)).

A motion to amend the scheduling order to reopen discovery will be granted for good cause. *Fed. R. Civ. P.* 16(b)(4). "The good cause standard requires the 'party seeking relief

5

to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.' " *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama*, NA, 315 F.3d 533, 535 (5th Cir. 2003)(citing 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). Good cause exists only when a party is unable to comply with a deadline due to unforeseeable, unusual or unavoidable circumstances beyond a party's control and the party was diligent in seeking the amendment. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). The inquiry focuses on the moving party's reasons for seeking modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.*

## DISCUSSION

The Court first reviews Defendants' reasons for seeking the modification. Wyeth initially objected to the magistrate judge's order denying the motion to reopen discovery and argued that the evidence sought is required to rebut the "presumption or inference of exposure" and thus class-wide reliance on the misrepresentations. In Defendants' initial written objection to the order, they argue that:

> Before the October Order, the class consisted only of consumers who were exposed to alleged misrepresentations by Wyeth, and it was clear that Plaintiff bore the burden of proving that class members were exposed to an alleged misrepresentation as an element of their UCL and CLRA claims. The October Order eliminated any reference to exposure in the class definition, and in doing so set up a presumption - at least for purposes of class certification - that every woman who purchased Premarin, Prempro, or Premphase during the class period was exposed to the alleged misrepresentations.

*Doc. No.* 330-1 at 7. Wyeth argued that it must proceed on developing its defense on the assumption that this Court has shifted the burden from Plaintiff to Defendant. In developing its defense, Defendants' seek to show "whether and to what extent class members were actually exposed to alleged misrepresentations." *Id.* at 8.

In their supplemental briefs, filed after this Court's ruling on the motion for summary judgment, Defendants slightly modify their position. Defendants now argue that absent

6

class-member and prescriber discovery is necessary to rebut a "presumption of class-wide reliance" permissible at trial presuming Plaintiff meets her burden of proof as to the materiality of the alleged misstatements and omissions. Defendants further argue that the magistrate judge erred in finding that Defendants did not establish good cause.

**A. CLRA Reliance v. UCL "As a Result of"**

The element of causation required under the CLRA differs from that required under the UCL.

1. <u>UCL Claim: No Proof of Reliance</u>

While California's Proposition 64 does require the injury to be a "as a result of" the unfair competition, it did not impose a "reliance" requirement. Prop. 64 §3, approved Nov. 2, 2004; See *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137-1138 (C.D. Cal. 2005) (discussing how a consumer may be harmed "as a result" of the falsity of a representation even where there was no actual reliance). The UCL plaintiff need only prove that the defendant's business practice was unfair or fraudulent, and that plaintiff suffered harm *as a result of* that practice. *Bus. & Prof.Code*, § 17204; *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010), *as modified on denial of reh'g* (Feb. 8, 2010). Plaintiff need only show a "casual connection" between the economic injury and the alleged unfair conduct to satisfy the causation prong under Bus. & Prof.Code, § 17204. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326 (2011). "[The] causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." *Hall v. SeaWorld Entm't, Inc.*, 747 F. App'x 449, 452 (9th Cir. 2018) (quoting *Daro v. Super. Crt.*, 151 Cal. App. 4th 1079, 1099 (2007), as modified on denial of reh'g (July 3, 2007)).

No reliance element exists under the UCL. For example, under the fraudulent prong of the UCL, Plaintiff must show that members of the public are likely to be deceived by Defendants' business practice. *In re Tobacco II Cases*, 46 Cal.4th 298, 312, 569 -70 (2009). "Actual falsehood, the perpetrator's knowledge of falsity, and perhaps most importantly, the victim's reliance on the false statements are not required to show a violation of

7

California's UCL." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *abrogated by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). Moreover, the Plaintiff's burden to establish the causal connection or link required between Defendant's alleged unfair or fraudulent business practice and the injury has not changed since the issuance of this Court's October 2015 order. The same causal connection was required in March 2011 before fact discovery began and before Defendants implemented their discovery plan to pursue information involving, among other interests, "class members' knowledge" regarding the potential benefits or risks of [their HRT]. *See Doc. No.* 126. Defendants made no request to extend fact discovery deadlines to achieve these goals prior to discovery cutoff.

## 2. CLRA Claim: Proof of Reliance

The CLRA makes unlawful "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale…of goods…to any consumer." *Civ.Code*, § 1770, subd. (a); *Steroid*, 181 Cal. App. 4th at 155. The CLRA plaintiff need only prove damages and either reliance on a material misrepresentation *or* that material facts were omitted. *Id.* at 157; *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153, (1972) (*Affiliated Ute*). When the allegations primarily involve a failure to disclose, as opposed to an affirmative misrepresentation, "positive proof of reliance is *not a perquisite* to recovery." (emphasis added). *Affiliated Ute*, 406 U.S. at 153. However, when the deceptive conduct alleged is a material representation, a class-wide inference of reliance is permitted. *Steroid*, 181 Cal. App. 4th at 157. "If the court finds that a reasonable [woman] would have relied upon the alleged misrepresentations, an inference of justifiable reliance by each class member would arise." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814, n.9 (1971). Defendants may introduce rebuttal evidence, but Plaintiff retains the burden of proof.

Citing *Pfizer Inc. v. Super. Ct.*, Defendants also argue exposure to the alleged misstatements is a necessary predicate for proving reliance. 105 Cal. Rptr. 3d 795, 803 (Cal. Ct. App. 2010). Indeed, certain prerequisites must be established – i.e. that a

8

statement was made, the statement was false or misleading, defendants made the misstatement, and plaintiffs were exposed to it. Class members cannot rely on information to which they were never exposed. *See Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1020–21 (9th Cir.2011)*; Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir.2012)*. As such, the magistrate judge correctly noted that a "lack of exposure is a defense to reliance." *Doc. No.* 323 at 15. However, evidence of a long-term, broadly disseminated, "common policy or practice… is evidence that the class as a whole was exposed." *Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1137 (9th Cir. 2016); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009); *Massachusetts Mutual Life Ins. Co. v. Super. Ct*. 97 Cal.App.4th 1282, 1294 (2002). Further, Plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements" where Plaintiffs are able to prove, with sufficient evidence, that "those material misrepresentations and false statements were part of an extensive and long-term advertising campaign." *In re Tobacco II Cases*, 46 Cal. 4th 298, 328, 207 P.3d 20, 40–41 (2009). Indeed, this Court held that:

> "[t]he evidence demonstrating Wyeth consistently made the same material misrepresentations during a strategically orchestrated widespread multi-year advertising campaign entitles plaintiff to an inference of reliance.

*Krueger v. Wyeth, Inc*., No. 03CV2496 JAH AJB, 2011 WL 8971449, at *11 (S.D. Cal. Mar. 30, 2011).

Wyeth argues the Court impermissibly expanded the scope of the class by implementing a "presumption of exposure." The Court disagrees. At the class certification stage, this Court found that Plaintiff presented sufficient evidence by which reliance on a class-wide basis could be established without individualized proof as to each consumer. Plaintiff must still present competent evidence at trial on which a fact-finder may rely to find that the class as a whole was exposed to defendant's alleged misstatements in the first instance. One method by which Plaintiffs may establish class-wide exposure to the alleged misrepresentations is to put forth evidence that Defendants engaged in an orchestrated, widespread, multi-year advertising campaign. Defendants, of course, may introduce

9

evidence to the contrary, i.e. the representations were not systematic or widespread, or that they were made during a short time period.

Even if exposure is established, Plaintiff must put forth evidence of class-wide reliance as well. For Plaintiff to trigger a class-wide inference of reliance under the CLRA, Plaintiff must prove that the alleged misstatements were "material." *Steroid*, 181 Cal. App. 4th at 157. As the magistrate judge stated:

> Inferences, as a matter of law, do not shift the burden from the plaintiff (or prosecutor) to the defendant, because the inference is merely a factual finding the trier-of-fact may draw from actually-established facts or evidence. *Francis v. Franklin*, 471 U.S. 307, 315 (1985)... An inference is not evidence itself and does not lessen the standard of proof…. [A] permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.

*Doc. No.* 323 at 17-19; *See also Vasquez*, 4 Cal. 3d at 814 (regardless of whether an inference or a presumption of reliance arises upon proof of a material false representation, defendants may introduce evidence in rebuttal.)

This Court issued the order discussing the relationship between materiality and the class-wide inference of common reliance in March 2011– a month before the joint discovery plan, over a year before the close of discovery, and almost five years before Defendant's motion to amend the scheduling order was sought. Defendants have been aware since March 2011 that they needed to develop evidence to rebut the inference of reliance. As Magistrate Judge Dembin noted, the 2011 Joint Discovery Plan indicates Defendants' sought discovery involving "Class members' exposure to written and oral statements," their "knowledge relating thereto," and "Class members' physicians' views" regarding the potential benefits or risks of Wyeth's HRT. *See Doc. Nos.* 126; 323. Despite acknowledgement of the need to conduct discovery relating to class exposure, knowledge, and physician's views, Defendants did not do so prior to the fact discovery deadline. They did not request additional time to do so, nor did they object to the magistrate judge's order that fact discovery would not be extended beyond June 20, 2012. Defendants only

requested to extend the discovery deadlines to allow more time for the nine non-party witnesses to be produced and deposed by opposing counsel.

Nothing in the Court's 2015 and 2019 Orders changed the facts in dispute or the defenses available. Defendants may present evidence that the alleged misrepresentations or omitted facts were not material in an effort to rebut any class-wide inference of reliance established by Plaintiff at trial. However, they may only reopen discovery to do so when an unforeseeable, unusual, or unavoidable circumstance makes complying with the discovery deadline beyond their control. None of those circumstances exist here. The discovery Defendants now seek could have been obtained during the discovery period. Accordingly, the Court finds no error in the magistrate judge's determination that Defendants' "failure to pursue this discovery while discovery was open despite knowledge of the supposed need precludes a finding of diligence."

## CONCLUSION

For the reasons set forth above, the Court finds that the magistrate judge's order denying Defendant's motion to amend the scheduling order and reopen discovery was neither clearly erroneous nor contrary to law.

Defendant's objections are OVERRULED.

**IT IS SO ORDERED**.

DATED: September 30, 2019

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT COURT

11