UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL KRUEGER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WYETH, INC. f/k/a AMERICAN HOME PRODUCTS, a Pennsylvania corporation; WYETH PHARMACEUTICALS f/k/a WYETH AYERST PHARMACEUTICALS, a Pennsylvania corporation; and Does 1 through 100, Inclusive,<br><br>Defendants. | Case No.:  3cv2496-JAH (MDD)<br><br>**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF PLAN TO DISTRIBUTE RESIDUAL CLASS SETTLEMENT FUNDS [DOC. NO. 433]** |

Pending before the Court is Plaintiff April Krueger's Unopposed Motion for Approval of Plan to Distribute Residual Class Settlement Funds. *Doc. No. 433*.  Having carefully considered the Plaintiff's Motion; supporting Declarations and exhibits; Defendant Wyeth's Separate Submission in Support of Motion *[Doc. No. 434]*; and, the law, the Court hereby **GRANTS** Plaintiff's Motion.

///

///

1

## BACKGROUND

Plaintiff filed this consumer protection class-action lawsuit on December 12, 2003. *Doc. No.* 1. Plaintiff's claims arose from the allegation that, between January 1995 and January 2003 (the "Class Period"), Defendants violated California consumer protection laws by conducting a long-term, systematic and widespread marketing campaign designed to misrepresent the benefits and health risks associated with their hormone replacement therapy ("HRT") drugs (Premarin, Prempro, and Premphase). More specifically, Plaintiff alleged that the Defendants violated California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") by misrepresenting to consumers that its HRT drugs lowered cardiovascular, Alzheimer's and/or dementia risk, and did not increase breast cancer risk. For their part, Defendants denied all of the Plaintiff's allegations and claims and maintained that they had substantial legal and factual defenses to those claims.

On March 10, 2020, the parties' entered into a Class Settlement Agreement. *Doc. No. 400-3*. The terms of the agreement provide that there will be no reversion of the $200,000,000 settlement amount and that in the event of excess funds, any such funds should be distributed "so as to benefit and promote the ongoing health, safety, and welfare of Settlement Class Members and California women similarly situated." *Id., at ¶ 4.8*.

On September 1, 2020, the Court issued its Order Granting Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement. *Doc. No. 432*. Concerning the disposition of residual class settlement funds, the Court's Order states:

> If the aggregate amount of paid claims to Settlement Class Members, plus the Plaintiff incentive award allowed by the Court, plus the Class Counsel fees and expenses awarded by the Court, plus the notice and administration costs, is less than the Settlement Amount (plus interest) remaining in the Common Fund, the Court will then determine and direct how the remainder of the funds should be distributed so as to benefit and promote the ongoing health, safety and welfare of Settlement Class Members and California women similarly situated.

2

> At this time, the Court is inclined to distribute any excess or residual funds to major California medical centers and targeted research groups specializing in the detection, treatment, prevention, and cure of breast cancer, women's cardiac issues, Alzheimer's, and early-onset dementia; with additional emphasis on the care and treatment of such diseases for marginalized and diverse women in California communities that historically lack such care and treatment. Consistent with these goals and objectives, the Court grants Plaintiff 60 days from the entry of this Order to solicit and gather proposals for the distribution of any residual Settlement funds and present them to the Court in a further filing with appropriate declarations from the proposed entities and organizations.

*Id.* at ¶ 22.

To date, the following payments have been made from the $200,000,000 Common Fund: (a) $905,218.59, representing Class Counsels' expenses; (b) $30,000, representing Plaintiff April Krueger's incentive award; (c) $50,000,000, representing Class Counsels' attorneys' fees; (d) $784,769 to Kinsella Media, representing its Settlement Class Notice costs; and, (e) $360,000 to Rust Consulting, representing its settlement administration fees and expenses to date. *See*, *Doc. No. 433-9, Decl. of R. Blake, at ¶ 5*. Regarding future expenditures from the Common Fund, the court-appointed Claims Administrator, Rust Consulting, estimates that it will charge an additional $470,000 in professional fees and expenses for the administration of this Class Settlement. *Id., at ¶ 6.*

Additionally, Rust Consulting reports that it has received 10,501 timely claims thus far (i.e., claims submitted by the September 1, 2020, claim deadline). Of that number, 9,943 are Option 1 claims, 483 are Option 2 claims, and 75 involve claims where the claimant did not choose an option and have not yet responded to a deficiency letter. *Id., at ¶ 7.* Assuming all Option 1 and 2 claims are found to be valid at the conclusion of the verification and audit process, Rust Consulting believes that the maximum total value of the Option 1 claims would be $4,560,257.52 and the maximum total value of the Option 2 claims would be $698,623.38 -- for a combined maximum total value of $5,258,880.90. *Id*.

1   Based on the payments that have been issued from the Common Fund thus far
2   ($52,079,987.59); the additional fees and expenses that Rust Consulting expects to
3   charge for its administration of the Class Settlement ($470,000); and, the maximum total
4   value of Option 1 and Option 2 claims submitted by Class Members ($5,258,880.90);
5   Rust Consulting projects that the Court will have at least $142,191,131.51 in residual
6   Class Settlement funds to distribute in accordance with paragraph 22 of its Final
7   Approval Order. *Id., at ¶ 8.*

## LEGAL STANDARD

9   "*Cy pres* provides a mechanism for distributing unclaimed funds to the next best
10   class of beneficiaries." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 760 (9th Cir.
11   2018). "Under the *cy pres* approach, 'class members receive an indirect benefit (usually
12   through defendant donations to a third party) rather than a direct monetary payment.' "
13   *Id.* (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)). Consequently,
14   *cy pres* "distribution options should be guided by (1) the objectives of the underlying
15   statute and (2) the interests of the silent class members." *Six Mexican Workers v. Ariz.*
16   *Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). The *cy pres* remedy also "must
17   account for the nature of the plaintiffs' lawsuit." *Nachshin v. AOL, LLC*, 663 F.3d 1034,
18   1036 (9th Cir. 2011).

## ANALYSIS

20   Plaintiff's motion seeks approval of a plan for a *cy pres* distribution of residual
21   funds to six California medical and research institutions; namely, Scripps Health – MD
22   Anderson, San Diego ("Scripps Health"), the University of California, Davis ("UCD"),
23   the University of California, San Diego ("UCSD"), the University of California, San
24   Francisco ("UCSF"), the University of California, Los Angeles ("UCLA Health"), and
25   the University of Southern California Keck Medicine ("USC Keck"). *See, Doc. No. 433-*
26   *2, Decl. of David B. Byrne*. The six institutions have all submitted detailed proposals
27   and budgets for medical research programs and community health projects that focus on
28   "the detection, treatment, prevention, and cure of breast cancer, women's cardiac issues,

Alzheimer's, and early-onset dementia; with additional emphasis on the care and treatment of such diseases for marginalized and diverse women in California communities that historically lack such care and treatment." *See, Doc. Nos. 433(3-8), Exhibits A, B, C, D, E, & F.* Importantly, each proposal caps indirect, administrative, and overhead costs at 10% or less of the institution's total proposed budget so as to ensure that any residual Class settlement funds awarded will achieve the greatest impact for the Class and women similarly situated. All total, the combined proposals seek residual Class settlement funds in the amount of $142,126,497 – a figure slightly below the projected $142,191,131.51 that Rust Consulting expects to have on hand at the end of the claim administration process.

Having already determined that any residual Class settlement funds should be distributed "so as to benefit and promote the ongoing health, safety and welfare of Settlement Class Members and California women similarly situated", the Court now considers whether the six California medical and research institutions identified in Plaintiff's motion are appropriate *cy pres* beneficiaries based on (1) the nature of the plaintiff's lawsuit; (2) the objectives of the underlying statutes; and, (3) the interests of the silent class members, including their geographic diversity. *Nachsin*, 663 F.3d at 1040.

## I.   Appropriateness of the Proposed *Cy Pres* Beneficiaries

### a.  The Nature of the Suit

As stated above, Plaintiff's Class Complaint alleged that the Defendants violated California consumer protection laws by misrepresenting to consumers that its HRT drugs lowered cardiovascular, Alzheimer's and/or dementia risk, and did not increase breast cancer risk. Because these allegations were central to the Plaintiff's suit, the Court's Final Approval Order expressed a preference for distributing "any excess or residual funds to major California medical centers and targeted research groups specializing in the detection, treatment, prevention, and cure of breast cancer, women's cardiac issues, Alzheimer's, and early-onset dementia; with additional emphasis on the care and

treatment of such diseases for marginalized and diverse women in California communities that historically lack such care and treatment." *Doc. No. 432, at ¶ 22*.

Here, the research and community health projects identified in the six medical-research institutions' proposals clearly and adequately address the diseases of concern in this lawsuit. Scripps Health's proposal and corresponding $22,127,500 budget involves cutting-edge research targeting breast cancer, heart disease, and dementia treatments; as well as community health programs designed to treat and educate marginalized communities in and around San Diego County. *See, Doc. No. 433-3.* UC Davis proposes to use a $24,000,000 *cy pres* distribution to create unique research and care initiatives in breast cancer, cardiovascular disease, Alzheimer's, and early-onset dementia – all within one of the most geographically broad and ethnically diverse populations in California. *See, Doc. No. 433-4.* For its part, UC San Diego, seeks a $24,000,000 *cy pres* distribution to fund groundbreaking research aimed at the prevention, detection and treatment of breast cancer, cardiovascular disease and neurological disorders in women. *See, Doc. No. 433-5.* UC San Francisco's $24,000,000 proposal involves numerous interlinked research and community health projects related to overuse, misuse and unequal use of health care related to the diagnosis and treatment of breast cancer, cardiac disease and dementia. *See, Doc. No. 433-6.* UCLA Health's proposal for a $23,999,510 *cy pres* distribution would provide important care to underserved communities across Los Angeles County and fund critical research in the areas of breast cancer, cardiovascular disease in women, and neuroscience. *See, Doc. No. 433-7.* Lastly, USC Keck Medicine's $23,999,487 proposal would fund a number of exciting projects designed to advance the diagnosis, treatment, prevention and cure of Alzheimer's disease, breast cancer and cardiovascular disease in women, with particular emphasis on mitigating the impact of these devastating conditions for women from disadvantaged communities with major health disparities. *See, Doc. No. 433-8.*

For these reasons, the Court finds that, in proposing these six institutions as *cy pres* recipients, Plaintiff has sufficiently considered the nature of this lawsuit.

### b.  The Objectives of the Underlying Statutes

Plaintiff's Complaint alleges violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.,* and Consumer Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code §§ 1750 *et seq.* These statutes are meant "to preserve fair competition and protect consumers from unfair market distortions." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 331 (2011).

In this case, the allegedly "unfair market distortions" involve the Defendants' representations concerning its HRT drugs and whether or not they lowered cardiovascular, Alzheimer's and/or dementia risk, and did not increase breast cancer risk.  Consequently, since the six institutions put forward for *cy pres* distributions have all proposed to use their funds for medical research and community health projects aimed at the detection, treatment, prevention and cure of breast cancer, women's cardiac issues, Alzheimer's, and early-onset dementia, the Court concludes that they all satisfy "the objectives of the underlying statute[s]." *Six Mexican Workers*, 904 F2d at 1307.

### c.  The Interests of the Class Members

The "touchstone of the inquiry" in distributing excess funds in a class action settlement is whether the distributions bear a "substantial nexus to the interests of the class members." *In re Easysaver Rewards Litig.*, 906 F.3d at 762.  Here, the Class is comprised of women who purchased the Defendants' HRT drugs in California between January 1995 and January 2003 (the "Class Period").  As such, Class members have a significant interest in research and community health initiatives focusing on breast cancer, heart disease, Alzheimer's disease and dementia.  Given that the medical research and community health projects proposed by the six California medical institutions will directly address these diseases, they will undoubtedly benefit the health and well-being of Class members and all California women similarly situated – possibly for generations to come.  Therefore, the Court finds that each institution is an appropriate *cy pres* beneficiary and that the Plaintiff's plan for distributing residual Class settlement

funds to the individual institutions is altogether reasonable and consistent with the Court's directive in its September 1, 2020, Final Approval Order.

**II.    The *Cy Pres* Beneficiaries' Reporting Obligations**

The Plaintiff's Motion proposes that each *cy pres* beneficiary file an annual report with the Court (through Class Counsel) detailing their overall progress, relevant medical and scientific results, and expenditures for each of their approved and funded projects and programs.  Given the significant amount of funds involved and the scope and duration of the six institutions' research and community health projects, the Court finds that this type of annual reporting is essential.  Accordingly, each institution receiving a *cy pres* distribution pursuant to this Order will be required to file a yearly report with the Court (through Class Counsel) for a period of six (6) years, beginning in 2021.  The annual reports must be provided to Class Counsel on or before December 1st of the relevant reporting year and include a reasonably detailed summary of the institution's progress, relevant medical and scientific results, and expenditures for each of their individually approved and funded projects and programs.

**III.    Annual Conference Participation for *Cy Pres* Beneficiaries**

Likewise, the Court specifically approves and incorporates the Plaintiff's recommendation that each *cy pres* beneficiary be required to participate in an annual conference that will allow their funded faculty, researchers, and project leaders to meet in a collaborative fashion, discuss the results of their work, and share ideas to advance the study, treatment, and cure for breast cancer, Alzheimer's disease, dementia, and cardiovascular disease in women.  To that end, the conferences will be held sometime in the first quarter (January through March) of each year for a period of 6-years, beginning in 2022, with each participating institution serving as the host on a one-time rotating basis. In the inaugural year(s), this conference may need to be held virtually.  However, as soon as a large in-person gathering can take place, and stay within health and safety protocols, the institutional hosts should hold the annual conferences at their campus-facility.

Finally, to the extent any additional residual class settlement funds remain after the claim administration process has been concluded; all related costs of settlement administration have been satisfied; and, the six institutions' proposed projects and programs have been funded, the remaining monies shall be divided equally among the institutions to help defray the cost and expense of their annual conferences.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion *[Doc. No. 433]* is hereby **GRANTED**. The Court further finds, and **ORDERS** the following:

1.  Subject to there being sufficient residual Class settlement funds remaining after the claim administration process has concluded and all related costs of settlement administration have been satisfied, *cy pres* distributions will be made to the following institutions in accordance with their written proposals and budgets:

    a.  Scripps Health – MD Anderson, San Diego - $22,127,500;

    b.  The University of California, Davis - $24,000,000;

    c.  The University of California, San Diego - $24,000,000;

    d.  The University of California, San Francisco - $24,000,000;

    e.  The University of California, Los Angeles - $23,999,510; and,

    f.  The University of Southern California Keck Medicine - $23,999,487.

2.  To ensure that the *cy pres* distributions are utilized to achieve the maximum possible benefit for the Class and women similarly situated, the institutional beneficiaries may not apply more than 10% of their awarded funds to indirect, administrative, and/or overhead costs.

3.  To the extent that there are insufficient residual Class settlement funds to permit the *cy pres* distributions set forth above, the distributions to each of the six institutions will be reduced on a pro rata basis.

4.  To the extent that there are additional residual class settlement funds remaining after the claim administration process has concluded; all related costs of settlement administration have been satisfied; and, the *cy pres* distributions set forth above

have been made, the remaining class settlement funds shall be divided equally among the six institutions and shall be used solely to help defray the cost and expense of their annual conferences.

5. Each institution that receives a *cy pres* distribution pursuant to this Order will be required to file a yearly report with the Court (through Class Counsel) for a period of six (6) years. The annual reports must be provided to Class Counsel on or before December 1st of the relevant reporting year, beginning in 2021, and include a reasonably detailed summary of the institution's progress, relevant medical and scientific results, and expenditures for each of their individually approved and funded projects and programs.

6. Each institution that receives a *cy pres* distribution pursuant to this Order will be required to participate in an annual conference that will allow their funded faculty, researchers, and project leaders to meet in a collaborative fashion, discuss the results of their work, and share ideas to advance the study, treatment, and cure for breast cancer, Alzheimer's disease, dementia, and cardiovascular disease in women. The conferences will be held sometime in the first quarter (January through March) of each year, beginning in 2022, for a period of 6-years, with each participating institution serving as the host on a one-time rotating basis. Conference details will be given to the Court and Class Counsel at least 60-days prior to the scheduled conferences.

**IT IS SO ORDERED.**

DATED: November 10, 2020

_____

Hon. John A. Houston
United States District Judge